**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Laura A.V.,[1]                                              Case No. 25-cv-2546 (DJF)

      Plaintiff,

v.                                                                    **ORDER**

Frank Bisignano,
*Commissioner of Social Security*
*Administration*,

      Defendant.

Pursuant to 42 U.S.C. § 405(g), Plaintiff Laura A.V. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her application for disability insurance benefits under Title II of the Social Security Act ("DIB") ("Decision"). Plaintiff challenges the Administrative Law Judge's ("ALJ") analysis of her treating provider's opinion and the ALJ's assessment of her residual functional capacity. She asks the Court to vacate and reverse the Decision, or in the alternative, remand this matter to the Commissioner for a new hearing. (ECF No. 1.) The Commissioner asks that the Decision be affirmed in its entirety. (ECF No. 17.) This matter is before the Court on the parties' briefs.[2] For the reasons given below, the Court finds the ALJ failed to sufficiently articulate why she rejected the opinion of Plaintiff's treating provider and failed to adequately explain her determination that Plaintiff is capable of sustaining a 40-hour work week. The Court therefore reverses the Decision and remands this

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

[2] The parties consented to have the undersigned United States Magistrate Judge conduct all proceedings in this case, including entry of the final judgment.

1

matter to the Commissioner for further review consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

**I.      Plaintiff's Claim**

Plaintiff applied for DIB on January 24, 2022.  (*See* Soc. Sec. Admin. R. (hereinafter "R.") 218-19).[3]  At that time she was a 47-year-old woman with a 4-year college degree.  (R. 299.)  She had previously worked as a church program assistant and curriculum coordinator (*id*.) and, on the date of the application, was working remotely part-time as an administrative assistant for an online business (*id.*, R. 62-63).  Plaintiff alleged a disability onset date of April 1, 2021 (R. 17, 218) resulting from myalgic encephalomyelitis ("ME") and chronic fatigue syndrome ("CFS") (R. 298).

**II.     Regulatory Background**

An individual is considered disabled for purposes of DIB if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are

---

[3] The Social Security administrative (R.) is filed at ECF No. 4. For convenience and ease of reference, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled.  20 C.F.R. § 404.1520(a)(4).  At step one, the claimant must establish that she is not engaged in any "substantial gainful activity."   20 C.F.R. § 404.1520(a)(4)(i).  The claimant must establish at step two that she has a severe, medically determinable impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing").  20 C.F.R. § 404.1520(a)(4)(iii).[4]  If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four.  The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving that she cannot perform any past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the claimant can perform such work, the Commissioner will find that the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(v).

---

[4] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected.  *See* 20 C.F.R. Part 404, Subpart P, App. 1.

### III.     Relevant Procedural History

An ALJ held a hearing on Plaintiff's application on October 12, 2023 and then continued the matter for a second hearing on April 30, 2024.  (R. 33-83.)  An attorney represented Plaintiff during the hearings, and Plaintiff and a vocational expert testified.  (*Id.*)

The ALJ issued her Decision on June 14, 2024.  (R. 14-32.)  The Decision turned, in relevant part, on the ALJ's assessment of Plaintiff's RFC.  The ALJ found that Plaintiff has the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except only occasionally climb stairs or crouch or crawl or kneel, stoop or bend or "balance" as that term is defined in the Selected Characteristics of Occupations; she would not be able to work around hazards so she could not climb any ladders or ropes or scaffolding or work at unprotected heights or around dangerous, moving machinery; and, she is limited to work that is self-paced as opposed to working in a production-rate environment or in a job with an hourly quota.

(R. 21.)

Based on testimony from the vocational expert, and considering Plaintiff's age, education, work experience, and the above-stated RFC, the ALJ found there are jobs existing in significant numbers in the national economy that Plaintiff can perform.  (R. 27-28.)  The ALJ thus concluded that Plaintiff was not disabled from April 1, 2021, her alleged disability onset date, to the date of the Decision.  (R. 28.)  The Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1-6), and this lawsuit followed.

## DISCUSSION

### I.     Standard of Review

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole."  *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).    "Substantial evidence … is more than a mere scintilla."

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted).    It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  This "threshold … is not high."   *Id.* But a court determining whether evidence is substantial must also consider whatever is in the record that fairly detracts from its weight.  *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).  "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision."  *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision."  *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review).  At a minimum, the ALJ must build a logical bridge between the evidence and the RFC she creates.  She does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion."  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7.  "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

## II.   Medical Opinion

### A.   Relevant Medical Records

Plaintiff challenges the ALJ's assessment of the medical opinion of Dr. Ruby Tam.   Dr. Tam is a doctor of osteopathic medicine ("DO") affiliated with a clinic specializing in ME/CFS treatment.  (*See* R. 384, 424.)  Dr. Tam began treating Plaintiff for ME on November 15, 2021. (*See id*.)  The notes from Plaintiff's first visit with Dr. Tam indicate Plaintiff reported experiencing significant fatigue since college.  (R. 384.)  Plaintiff also reported she had previously attempted treatment with mental health medications but stopped taking them because they did not help her. (*Id.*)  Plaintiff stated she had to leave her previous employment because she "felt that she would be in bed the entire day."  (*Id.*)  She also said she "has brain fog, memory problems, recalling words and things she shared with someone."  (*Id.*)  Plaintiff brought various laboratory reports with her to the appointment with Dr. Tam, including results for previous thyroid, CBC (blood count) and cortisol tests, which were largely normal.  (*Id*.)

Dr. Tam's notes reflect normal examination findings except that, by the end of the 40-minute examination, Plaintiff "needed to lay supine on the exam table."  (R. 385.)  Dr. Tam confirmed Plaintiff's diagnosis with ME, advised Plaintiff to "pace herself", and referred Plaintiff for a cardiology appointment and a sleep study to rule out sleep apnea.  (*Id*.)  Dr. Tam also diagnosed Plaintiff with a vitamin B-12 deficiency and prescribed an injection.  (*Id*.)  Plaintiff declined the injection and stated that B-12 caused her heart to race.  (*Id*.)  Dr. Tam then recommended that Plaintiff continue taking oral B-12 supplements and consider increasing the dosage.  (R. 383.)

Plaintiff visited Dr. Tam again on December 19, 2021 following Plaintiff's completion of the recommended sleep study.  (R. 382.)  Based on the results of the sleep study, which were

"indeterminate for sleep disordered breathing" (R. 388), Dr. Tam assessed Plaintiff with "daytime somnolence" (R. 382).

Plaintiff next visited Dr. Tam on August 19, 2022 for a routine physical examination. (R. 439-443.)  Plaintiff reported that she had recently been helped by acupuncture treatments and massage. (R. 439.)  Dr. Tam's examination findings reported no new concerns, except that Plaintiff's bloodwork showed elevated magnesium levels and Dr. Tam advised Plaintiff to decrease her magnesium intake. (R. 438.)  She also referred Plaintiff to another provider for ongoing primary care and recommended continued acupuncture and massage. (R. 440.)

On June 14, 2023, Plaintiff saw Dr. Tam again for a one-hour-and-16-minute virtual examination following up on Plaintiff's chronic fatigue. (R. 426-28.)  Plaintiff reported to Dr. Tam that she was working part-time. (R. 427.)  She stated she worked 5-6 hours on the days she worked, but she was unable to work those hours consistently throughout the week. (*Id*.)  "One time she worked 11 hours for Monday and Tuesday but cannot work until the following Tuesday." (*Id*.)  She reported working 11-15 hours per week and resting on days when she was not working. (*Id*.)  Plaintiff reported that she was able to shop for groceries weekly but would need to spend the entire next day in bed or on the couch resting, during which she experienced intermittent dizziness and body aches. (*Id.*)  She said she normally needs to rest when she is not working and cannot do cooking, laundry or driving for her family. (*Id*.)  She does her own laundry by pacing the work involved. (*Id*.)

Plaintiff also noted during the examination that she had a strong sensitivity to medicines, foods, and smells, which she believed might be worsening. (*Id*.)  She further stated she had previously tried anti-depressants Wellbutrin and Zoloft, but she was unable to tolerate them. (*Id*.)  She said some medications increase her "brain fog". (*Id*.)

Dr. Tam noted that during the examination, Plaintiff had difficulty finding words and could not explain herself.  (*Id*.)  She was unable to log into the online portal for her virtual appointment without assistance.  (*Id*.)  When Dr. Tam asked Plaintiff to calculate how much money she would make in a 35-hour workweek, Plaintiff was unable to do so with a calculator and eventually gave up.  (R. 427-28.)  Towards the end of the appointment, Plaintiff closed her eyes for long periods and often yawned.  (R. 428.)

Dr. Tam administered a formal assessment of Plaintiff called the "Perrin Questionnaire for Chronic Fatigue Syndrome/ME" and a standardized test called the "Profile of Fatigue Related States."  (R. 431-36.)  Dr. Tam found that though Plaintiff might benefit from a treatment for ME/CFS called the "Perrin technique", given her current condition she may not be a good candidate for it because it would require her to drive to the clinic and administer self-treatment daily.  (R. 428.)  Dr. Tam instructed Plaintiff to contact her for an appointment when she was able to commit to the procedure.  (*Id*.)  Dr. Tam also found, given Plaintiff's worsening food and smell sensitivities, that Plaintiff had suspected mast cell activation syndrome.  (*Id*.)

Dr. Tam authored a Medical Source Statement in connection with the June 14, 2023 examination.  (R. 420-24.)  She determined that Plaintiff can sit for about four hours, but that after sitting and working for five hours Plaintiff would need to rest for the remainder of the day so she could work again the next day.  (R. 421-22.)  Dr. Tam further found that Plaintiff can stand for less than five minutes at a time before needing to sit down or walk, and that she could stand/walk for a total of less than 30 minutes in an 8-hour workday.  (R. 422.)  Dr. Tam stated that Plaintiff needs a flexible work schedule that will allow her to rest before going to work again, and that if Plaintiff works 2 days in a row, she needs to rest for the remainder of the week due to fatigue and cognitive impairment.  (*Id*.)  Dr. Tam also determined that Plaintiff is unlimited as to reaching,

8

handling or fingering, but she can only lift less than 10 pounds occasionally, rarely twist, stoop, or climb stairs, and never crouch or climb ladders. (R. 423.) Dr. Tam stated that Plaintiff would be off-task 25% or more of the time during a typical workday and would be absent more than four days per month. (*Id*.) Finally, Dr. Tam concluded that Plaintiff's limitations and symptoms were reasonably consistent with the testing and clinical findings in the medical record. (R. 424.)

**B.      Legal Standards**

Under regulations revised in 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *see also Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)) ("treating physicians are [no longer] entitled to special deference"). An "ALJ is free to accept some, but not all, of a medical opinion," *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022), and "an ALJ is not required to discuss every piece of evidence submitted," *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). But if an ALJ improperly evaluates the persuasiveness of prior medical findings, she commits a legal error that is subject to de novo review. *See Tiffany B. v. Kijakazi*, No. 22-cv-1227 (ECT/DLM), 2023 WL 3958424, at *2 (D. Minn. May 22, 2023), *report and recommendation adopted*, 2023 WL 3955348 (D. Minn. June 12, 2023).

Under the applicable regulations, an ALJ must evaluate the persuasiveness of medical opinions and prior administrative medical findings in the record based on several enumerated factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's area of specialization; and (5) "other factors", including the medical source's familiarity with other evidence in the claim or understanding of Social Security Program

policies, and whether new evidence came to light after the medical opinion was provided. 20 C.F.R. § 404.1520c(c). The most important of these factors are supportability and consistency. 20 C.F.R. § 1520c(b)(2). An explanation of how the ALJ considered supportability and consistency is mandatory, while the ALJ is not required to articulate how she considered the other factors. *Id.*

"Supportability" means that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" means that the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); *see also Postel v. Saul,* 18-cv-2017 (MAR), 2019 WL 4720990, at *13 (N.D. Iowa Sept. 26, 2019) (finding medical opinion unreliable, in large part, because it was inconsistent with "counselor's and medication managers' treatment notes"); *Pierce v. Kijakazi*, 22 F.4th 769, 773 (8th Cir. 2022) (affirming ALJ's rejection of treating physician's opinion in light of plaintiff's relatively conservative course of treatment).

### C. Analysis

The ALJ's Decision evaluated Dr. Tam's Medical Source Statement as follows:

> In his [sic] statement, Dr. Tam detailed his [sic] opinion as to the claimant's abilities. The undersigned finds this treating source opinion is not consistent with treatment records, (1F, 6F and 7F), especially the consultative physical examination (2F and 7F/14 – 18). Dr. Tam's treatment records (1F, 6F and 7F) are brief and not supportive of his [sic] complex findings, which appear to mirror the claimant's subjective testimony at the hearings and in her reports to him [sic]. For these reasons, the undersigned finds this treating source's opinion is not persuasive.

10

Although this analysis recites the word "consistent", it provides no explanation at all regarding how the ALJ believed Dr. Tam's Medical Source Statement to be inconsistent with other medical and non-medical sources. The Decision cites all of Dr. Tam's treatment records and the opinion of consultative examiner nurse Erika Kuis, but it fails to state in any respect how the ALJ found Dr. Tam's opinion to be inconsistent with these records or which parts of the records the ALJ found materially inconsistent. The ALJ's wholesale citation to these records, without more, failed to create a "logical bridge" enabling the Court to understand the ALJ's reasoning.

As to supportability, the ALJ faults Dr. Tam's analysis for being "brief." But this characterization overlooks the fact that Dr. Tam's opinion is supported by equally as detailed and more voluminous documentation than that of Ms. Kuis, whose opinion the ALJ deemed "persuasive", and is further supported by multiple standardized assessment tools for providers who specialize in Plaintiff's condition. (*Compare* R. 401-05 *with* R. 426-36.) Finally, the ALJ's conclusion that Dr. Tam's opinion is "unpersuasive" because it is *consistent* with Plaintiff's own subjective statements and testimony is particularly problematic. Consistency with other parts of the record factors in favor of persuasiveness, not against it. And though an ALJ is free to reject a claimant's subjective complaints based on contrary evidence in the record, *see Montgomery v. O'Malley*, 122 F.4th 1059, 1066-67 (8th Cir. 2024), the fact that a claimant has made such subjective complaints is not a reasonable ground for discounting other evidence in the record that is entirely consistent with them. *C.f. Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (stating that an ALJ "must evaluate all evidence—including a claimant's subjective evidence—in [her] determination"). For these reasons the Court finds the ALJ failed to properly articulate her rationale for rejecting Dr. Tam's opinion and remands this matter for further administrative proceedings consistent with this Order.

### III.    RFC Assessment

Plaintiff also argues the ALJ's assessment of her RFC is not supported by substantial evidence because it fails to properly account for the impact of fatigue on her limitations. (*See* ECF No. 9 at 23-31.) Insofar as Plaintiff challenges the ALJ's failure to adequately support her conclusion that Plaintiff is capable of sustaining a 40-hour workweek, the Court agrees.

A claimant's RFC is the most she can do despite her limitations. *See* 20 C.F.R. § 404.1545. Social Security Ruling ("SSR") 96-8p sets forth the Social Security Administration's policies and policy interpretations regarding RFC assessment. Pursuant to SSR 96-8p, the RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities)." Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996). Because an ALJ's assessment of a claimant's RFC is a medical question, it "must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley*, 829 F.3d at 932 (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). However, the ALJ's RFC determination must be based on "all relevant evidence, including medical records, observations of treating physicians and others, and a claimant's own descriptions of [her] limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). A reviewing court must be able to follow the ALJ's reasoning and understand how she applied the relevant evidence to determine the claimant's RFC. "[T]he Court should not be left 'to speculate on what basis the Commissioner ... denied a claim.'" *Nathan L. v. O'Malley*, No. 23-cv-1310 (JWB/DJF), 2024 WL 3015139, at *5 (D. Minn. May 3, 2024), *report and recommendation adopted,* 2024 WL 3014866 (D. Minn. June 14, 2024) (citing *Collins v. Astrue*, 648 F.3d 869, 872 (8th Cir. 2011)).

In determining Plaintiff's RFC, the ALJ cited Plaintiff's testimony and statements, activities of daily living ("ADLs"), medical treatment history, and medical records, and the ALJ's assessment of the medical opinions and prior administrative findings in the record. (*See* R. 21-26.) Upon reviewing these sources, the ALJ rejected Plaintiff's testimony that, due to mental and physical fatigue, she is only able to work part-time, up to five hours on any given day with rest breaks during the five hours of work, a couple of hours of rest before and after any mental or physical task, and no ability to do household chores or other ADLs on days when she puts in as much as five hours of work. (*See* R. 21-22, 24.) The ALJ stated:

> [H]aving considered the medical evidence and compared it to the claimant's testimony and statements, the undersigned finds the claimant's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent with the evidence which shows the claimant has generally been treated conservatively, with few medications, but mainly with therapy including acupuncture, and massage. Additionally, the claimant continues to manage her own ADLs as well as those of her minor children, shop and manage the household, and engage in self-employment, albeit on a part time basis. While there is an indication that claimant does struggle with memory and concentration which is related to her CFS …, the evidence as a whole suggests that she is capable of work within the above residual functional capacity.

(R. 24.) As the ALJ thus explained, she based her decision largely on the medical evidence she found persuasive, Plaintiff's treatment history, Plaintiff's ADLs, and Plaintiff's part-time employment. But these sources do not appear to support the ALJ's determination that Plaintiff can sustain a 40-hour workweek (*see* R. 26).

The ALJ's assessment of Plaintiff's ADLs and part-time employment relies on the things Plaintiff testified she could do when she is rested but entirely ignores Plaintiff's testimony that she could not do them consistently over sustained periods of time. Though Plaintiff testified she was able to prepare meals for herself, do her own laundry and do limited household cleaning when she is sufficiently rested (R. 75-76), the ALJ's statement that Plaintiff "manages" the household and

13

her children's ADLs is misleading.  Plaintiff testified that her husband and children prepare their own meals, do their own laundry, do their own dishes and take out the garbage.  (R. 66, 76.) Plaintiff testified she could drive short distances and do simple grocery shopping for herself, but she also testified she does this only on days when she is rested and not working.  (R. 67.)  And while Plaintiff readily admitted she worked part-time, she said she only worked 15 hours per week at most due to her fatigue, and that she did so on a flexible schedule allowing frequent periods of rest.  (R. 62-64.)

The ADLs an ALJ relies on in making an RFC determination should be logically related to the claimant's impairments.  Here, the ALJ found Plaintiff has CFS and ME and that they are severe impairments.  (R. 20.)  Her ADLs are relevant only insofar as they tend to either support or undermine proposed functional limitations arising from the primary symptom of those conditions—extraordinary fatigue.  Just as a claimant's frequent lifting of heavy weights would have no bearing on limitations arising from a cognitive impairment, Plaintiff's ability to perform chores or work part-time during the limited hours supported by her statements and testimony does not support a determination that she is capable of sustaining activity throughout an 8-hour day or a 40-hour workweek.  Thus, though Plaintiff's statements and testimony regarding her ADLs and part-time employment support the ALJ's determination that she can perform "light work", they do not evidence an ability to do light work for 8 hours in a day or 40 hours in a week.

That Plaintiff was treating her condition with conservative treatments similarly does not establish that she is capable of sustaining full-time work.  The record reflects that Plaintiff attempted treatment with psychotropic medicines without success.  The only potential treatment supported by the medical record that Plaintiff did not obtain prior to the hearings is the Perrin technique.  Dr. Tam's medical notes from Plaintiff's June 14, 2023 examination stated that she

was not sure if Plaintiff would be a good candidate for the Perrin technique at that time, given Plaintiff's concurrent struggle to complete daily tasks and the fact that Plaintiff would need to drive herself weekly to appointments to obtain it. (R. 428.) Based on Plaintiff's testimony at the second hearing, she ultimately did make arrangements to begin the 12-week treatment regimen, but she was not expected to complete it until several months after the hearing. (R. 37.) There is no suggestion in the record that Plaintiff had the capacity to access this treatment at an earlier date, and in any event, there is nothing to suggest the treatment would mitigate her fatigue to the extent that she could maintain a full-time job.

Finally, the ALJ accepted only two medical opinions as "persuasive" or "partially" persuasive: (1.) the opinion of Dr. Matthias Jordan, the state agency medical consultant on review; and (2.) the opinion of consultative examiner Kuis. (*See* R. 24-26.) Neither opinion supports the ALJ's conclusion that Plaintiff can work 40 hours in a week.

The ALJ found the opinion of Dr. Jordan only "partially persuasive," noting that he did not have the opportunity to consider additional evidence submitted at the hearing level, which shows that Plaintiff is "slightly" more limited than he found her to be. (R. 25.) Though the Decision does not identify this additional evidence, the Court notes that Dr. Jordan authored his opinion on November 18, 2022 (*see* R. 99), while Dr. Tam completed her medical source statement on June 14, 2023 (*see* R. 424), such that Dr. Jordan could not have taken Dr. Tam's medical source statement into account. Moreover, Dr. Jordan's opinion is ambiguous at best. He concluded that Plaintiff could: (1.) perform a range of light work; (2.) stand or walk, with normal breaks, for a total of 6 hours in an 8-hour workday; and (3.) sit with normal breaks for a total of about 6 hours in an 8-hour workday, but that she would need to periodically alternate between sitting and standing to relieve pain and discomfort. (R. 99.) However, Dr. Jordan also stated Plaintiff was

15

disqualified from performing any of her previous jobs because she is "is incapable of sustaining a 40-hour workweek." (R. 100.)  The ALJ rejected this conclusion, noting that "the findings of the lower reviewers are not binding on the [ALJ] at the Hearing Level." (R. 25-26.)  While that is an accurate statement of the law, it would be plainly inaccurate to conclude that Dr. Jordan's opinion *supports* the ALJ's determination that Plaintiff can sustain a 40-hour workweek.

The only relevant medical opinion the ALJ found entirely persuasive was that of Ms. Kuis, who authored her report upon performing a consultative examination of Plaintiff on May 26, 2022. (R. 24; 400-05.)  Ms. Kuis noted that Plaintiff appeared fatigued and had some cognitive impairment, in that Plaintiff was "unable to recall three words or places at zero and five minutes recalling only two out of three." (R. 24, 404.)  Ms. Kuis further concluded that Plaintiff could "walk for 3 hours in an 8 hour day *with rest in between*", "stand for 3 hours in an 8 hour day *with resting in between*" and "sit for 4+ hours in an 8 hour day with intermittent shifting." (R. 402, emphasis added.)  However, Ms. Kuis's report offered no opinion as to how much rest Plaintiff would need between periods of standing or walking, or whether Plaintiff is capable of working a total of 8 hours in the same day. (*See* R. 400-05.)  Nor did she conclude that Plaintiff is able to sustain work for 40 hours in a given week. (*Id*.)  Ms. Kuis's examination report thus does not support the ALJ's conclusion that Plaintiff is capable of sustaining a 40-hour workweek.

Because none of the sources the ALJ cites in support of her RFC determination contradicts Plaintiff's testimony and statements that she is unable to sustain work for 40 hours in the same week, the Court is unable to follow the ALJ's reasoning and understand how she applied the relevant evidence to conclude that Plaintiff is capable of doing so.  The Court therefore remands this case for further administrative proceedings.  On remand, the ALJ may amend her findings, further develop the record as to whether Plaintiff can sustain a 40-hour workweek, or articulate a

16

basis for concluding she is capable of doing so with citations to sources that clearly support that finding.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Request for Relief (ECF No. 9) is **GRANTED IN PART AND DENIED IN PART**;

2. The Commissioner's Request for Relief (ECF No. 17]) is **DENIED**; and

3. This matter is remanded to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  May 4, 2026                                     s/ Dulce J. Foster
                                                        Dulce J. Foster
                                                        United States Magistrate Judge

17